IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
DERRICK JAVON LINDSAY,         )
                               )
     Plaintiff,                )
                               )
          v.                   )          1:11CV67
                               )
ROBERT C. LEWIS, et al.,       )
                               )
     Defendants.               )
```

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States Magistrate Judge for recommended rulings on Plaintiff's Motion to Amend (Docket Entry 36), Plaintiff's Motion in Limine (Docket Entry 39), and Defendants' Motion for Summary Judgment (Docket Entry 40). (See Docket Entry dated May 7, 2013; see also Docket Entry dated Feb. 15, 2012 (assigning case to undersigned Magistrate Judge).) For the reasons that follow, the Court should grant Defendants' instant Motion and should deny Plaintiff's instant Motions as moot.[1]

---

[1] Pursuant to this Court's Local Rule 56.1, "[a]ll dispositive motions and supporting briefs must be filed and served within 30 days following the close of the discovery period." M.D.N.C. LR56.1(b). Discovery in the instant case closed on March 15, 2012. (See Docket Entry 16 at 1.) Defendants filed the instant Motion for Summary Judgment on February 15, 2013 (see Docket Entry 40 at 2), nearly a year after the close of discovery. "Even when a motion for summary judgment is filed out of time, a district court may exercise its discretion to entertain the motion." Turner v. U.S., 869 F. Supp. 2d 685, 688 n.1 (E.D.N.C. 2012) (citing Lopez v. NTI, LLC, 748 F. Supp. 2d 471, 475-76 (D. Md. 2010), and Gomez v. Trustees of Harvard Univ., 676 F. Supp. 13,
(continued...)

## I. Background

Plaintiff commenced this case by filing a pro se prisoner form Complaint under 42 U.S.C. § 1983. (Docket Entry 2.) The Complaint alleges that Plaintiff, an inmate at Scotland Correctional Institution in Laurinburg, North Carolina, sustained injuries to his mouth in a fall that occurred when his shackles caught on the stairs of a prison van as he attempted to exit the vehicle. (See id. at 4.) The Complaint apparently asserts claims under the Eighth Amendment pursuant to 42 U.S.C. § 1983 against the officers who transported Plaintiff, as well as against various supervisors and prison officials, concerning Defendants' alleged deliberate indifference to the dangers the vehicle steps presented to shackled inmates and the alleged inadequacy of subsequent medical attention Plaintiff received. (See id. at 4-10.)

---

[1](...continued)
15 (D.D.C. 1987)); see also U.S. v. Johnson, 953 F.2d 110, 116 (4th Cir. 1991) ("Motions filed out of time are accepted at the discretion of the trial court . . . ."). In deciding whether to entertain out-of-time motions, courts consider whether the late-filing party acted in bad faith, whether the lateness of the filing would prejudice the non-moving party, and whether the court has insufficient time to consider the motion. See Lopez, 748 F. Supp. 2d at 475. In the instant case, none of these factors exist. Furthermore, "[t]he purpose of pre-trial procedure is to serve the bests interests of justice by eliminating unnecessary proof and issues and weeding out unsupportable claims." Gomez, 676 F. Supp. at 15. As discussed below, the record evidence does not support the Complaint's allegations that Defendants violated Plaintiff's constitutional rights and, therefore, in the interests of justice, Defendants' instant Motion should not be denied simply because they filed out of time.

To support their instant Motion for Summary Judgment, Defendants filed affidavits from various officials involved in the incident and related documents (attached as exhibits). (See Docket Entries 41-1, 41-2, 41-3, 41-4, 41-5, 41-6.)[2] In connection with

---

[2] Plaintiff made three filings in opposition to Defendants' instant Motion. (See Docket Entries 44, 45, 48.) To the first, Plaintiff attached a document titled "SWORN AFFIDAVIT" which states that "[t]his sworn affidavit by Plaintiff is in support of Plaintiffs [sic] statement [in response], stateing [sic] that it is a true and accurate statement and all that lies within that statement is true and accurate." (Docket Entry 44-1 at 1.) The "Statement of Claim" portion of Plaintiff's Complaint follows the title page of the "affidavit." (See id. at 2-8.) To the second Response, Plaintiff attached a second "SWORN AFFIDAVIT" which recounts the factual allegations set forth in the Complaint. (See Docket Entry 45-1 at 2-6.) These filings do not constitute affidavits. "[A]n affidavit, by definition, is a statement reduced to writing and the truth of which is *sworn* to before someone who is authorized to administer an oath." Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006) (emphasis in original) (internal quotation marks omitted). The documents Plaintiff submitted lack any indication that he swore to their truth before anyone authorized to administer an oath. (See Docket Entries 44-1, 45-1.) Nor did Plaintiff sign the documents under penalty of perjury pursuant to 28 U.S.C. § 1746. (See id.) Indeed, Plaintiff failed to sign his Responses to Defendants' instant Motion at all. (Compare Docket Entries 44, 45, 48, with Docket Entry 2.) Federal Rule of Civil Procedure 11(a) states that all documents before the court "must be signed by at least one attorney of record . . . - or by a party personally if the party is unrepresented" (emphasis added). "Although the Rules of Civil Procedure apply equally to *pro se* litigants, courts have held that 'a pleading filed inadvertently without any signature may be viewed as a technical defect and not a substantial violation of Rule 11.'" Harris v. SunTrust Mortg., Inc., No. 12-cv-378, 2013 WL 1120846, at *2 (M.D.N.C. Mar. 18, 2013) (Schroeder, J.) (unpublished) (quoting Hadlock v. Baechler, 136 F.R.D. 157, 159 (W.D. Ark. 1991)). Under these circumstances, the discussion which follows will take into account the arguments presented by Plaintiff in opposition to summary judgment, but will not treat his statements within his responsive filings as evidence. See generally United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) ("[U]nsworn argument does not constitute evidence . . . .").

his Responses, Plaintiff provided a number of exhibits which either duplicate Defendants' exhibits (compare Docket Entry 44 at 21, with Docket Entry 41-1 at 8; compare Docket Entry 45 at 10-12, with Docket Entry 41-1 at 8-9) or which otherwise fail to contradict the evidence submitted by Defendants in any material way (see Docket Entry 44 at 7-20, 22-23). This latter category includes: (1) two grievance reports that discuss the incident in question in a manner materially consistent with the facts presented in the affidavits provided by Defendants (Docket Entry 44 at 7, 22); (2) an apparent copy of the North Carolina Department of Correction's Standard Operating Procedures, Chapter 4: Custody and Security (id. at 8-15); (3) an unpublished opinion of the North Carolina Court of Appeals apparently hand-copied from "Google Scholar" (id. at 16-19); and (4) a hand-copied version of an alleged letter Plaintiff received from "North Carolina Prisone [sic] Legal Services, Inc.," informing him that it would not represent him in the instant matter (id. at 20).

The uncontested record evidence indicates that Defendants Patterson and Martin transported Plaintiff from Scotland Correctional Institution to Central Prison on June 3, 2010. (Docket Entry 41-1 at 1; Docket Entry 41-2 at 1.) Defendant Patterson "opened the inmate passenger door [of the van] . . . . [Plaintiff] was standing up when [Defendant Patterson] opened the door. [Defendant Patterson] leaned down to let the transport van's

4

step down, but before [she] could, [Plaintiff] took his foot and pushed the step forward." (Docket Entry 41-1 at 1-2.) Plaintiff stepped forward and, before Defendant Patterson could move to assist him, he "lost his balance and fell forward. . . . [He] fell with his feet still on the step and his two hands flat on the curb above his chest." (Id. at 2.) Upon inquiry from Defendant Patterson, Plaintiff indicated that "he had broken his tooth" but that he had not hit his head. (Id.) Defendants Patterson and Martin took Plaintiff to the Central Prison emergency room. (Id.; Docket Entry 41-2 at 2.) The emergency room staff referred him to the prison's dental clinic. (Docket Entry 41-5 at 1.) At the dental clinic, Plaintiff received treatment for several broken or cracked teeth, one tooth was removed, and a small "wound was closed in the usual manner with sutures." (Id. at 2.)

Plaintiff visited the dental clinic at Scotland Correctional Institution for follow-up three times over the next several days. (Id.) Plaintiff complained of some pain and that "spicules of bone were coming out of the extraction site." (Id.) However, the dentist indicated that "this was not unusual following this type of injury" and determined that the injuries were healing. (Id.) In October of 2010, Plaintiff returned to the dental clinic, again complaining of pain, and the clinic referred him to the dental clinic at Central Prison for a root canal. (Id.) Plaintiff received the root canal "as a result of trauma that occurred in

5

June [2010]." (Id. at 3.)  In April of 2012, Plaintiff received a second root canal on another tooth that had been damaged during the June 2010 fall. (Id.)

The Complaint requests compensatory damages in the amount of $2,125,000 and punitive damages in the same amount. (Docket Entry 2 at 11.)  It also seeks an injunction requiring that Defendants "replace [the] steps with a safer method of exiting the van." (Id.)  Finally, the Complaint requests that Defendants pay the cost of repairing the dental damage from the incident, as determined and performed by a dentist of Plaintiff's choosing. (Id.)

Plaintiff's instant Motion to Amend (Docket Entry 36) seeks leave to amend Plaintiff's prior "Memorandum to Introduce Exhibits to be Used at Trial" (Docket Entry 35). (See Docket Entry 36 at 1.)  Plaintiff's instant Motion in Limine (Docket Entry 39) "seeks to prevent [] [D]efendants or their attorney or any other party associated with [this case] from discussing [] [P]laintiff's criminal record, prison disoplinary [sic] record and any other matter which is not relevant to this case or which will influence the jury or judge appointed to this case unfairly" (id. at 1).

## II. Summary Judgment Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Such a genuine dispute exists if the evidence presented

6

Case 1:11-cv-00067-TDS-LPA   Document 58   Filed 08/21/13   Page 6 of 18

could lead a reasonable factfinder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus., 475 U.S. at 586-87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 252 (citation omitted); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

### III. Discussion

The Complaint alleges that Defendants violated Plaintiff's Eighth Amendment rights by exposing him to a condition Defendants knew to be unsafe (i.e., the van stairs) and failing to take steps

7

to protect Plaintiff from said condition. (See Docket Entry 2 at 6-11.) Liberally construed, the Complaint also alleges that Plaintiff suffered from inadequate dental treatment. (See id. at 5-6, 11.) In these regards, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989). In other words, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by . . . the Due Process Clause." Id. at 200 (emphasis added).

However, not every injury suffered by a prisoner "translates into constitutional liability for prison officials responsible for the victim's safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Plaintiff thus cannot maintain a constitutional claim against Defendants merely based on allegations that they negligently failed to protect him from an unsafe condition because "deliberate indifference describes a state of mind more blameworthy than negligence," Farmer, 511 U.S. at 835.

Instead, this standard applies:

8

> First, a constitutional violation occurs only where the deprivation alleged is "objectively, sufficiently serious." For a claim based on a failure to prevent harm, a [plaintiff] must show that he [was] detained or incarcerated "under conditions posing a <u>substantial risk of serious harm</u>." . . . <u>Second</u>, an official must have "a sufficiently culpable state of mind." In prison[/jail]-conditions cases, the requisite state of mind is "<u>deliberate indifference</u>."

<u>Brown v. Harris</u>, 240 F.3d 383, 388-89 (4th Cir. 2001) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)) (internal citations and secondary internal quotation marks omitted) (emphasis added). Similarly, as to claims based on denial of medical care, Plaintiff "must demonstrate that the [officials] acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." <u>Iko v. Shreve</u>, 535 F.3d 225, 241 (4th Cir. 2008).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it." <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999). Instead, the "deliberate indifference" prong requires Plaintiff to make "two showings":

> First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the [official] *should have* recognized it; [he] actually must have perceived the risk. Second, the evidence must show that the official in question subjectively recognized that his actions were inappropriate in light of that risk. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient.

<u>Parish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004) (internal citations and quotation marks omitted) (emphasis in

9

original). "The subjective component therefore sets a particularly high bar to recovery." Iko, 535 F.3d at 241.

### A. Defendants Patterson and Martin

The Complaint alleges that Defendants Patterson and Martin "had prior knowledge" that the van steps were unsafe, yet they "still agreed to transport" Plaintiff in the vehicle, intentionally placing him in danger. (Docket Entry 2 at 6-8.) It further alleges that both Defendants had access to his shackle connector, which they could have used to hold the shackles above the steps, thus preventing his fall, yet neither took this action. (Id.) The record, however, does not support the Complaint's allegations. It contains no evidence that Defendants Patterson and Martin knew of any risk the van stairs posed to Plaintiff, much less that they disregarded said risk. (See, e.g., Docket Entry 41-6 at 2 ("There were no reported problems with the van's steps when [Plaintiff] was injured.").)

Furthermore, Defendant Patterson averred that Plaintiff pushed the stairs out of the van before she could unfold them and that Plaintiff started down the stairs on his own before she could move forward to assist him. (Docket Entry 41-1 at 1-2; see also id. at 4-6.) Thus, Defendant Patterson's alleged failure to assist Plaintiff apparently resulted from Plaintiff's own actions. Moreover, Defendant Martin "was moving the medical jackets from the front of the van" at the time Plaintiff fell. (Docket Entry 41-1

10

at 1.) He therefore did not have immediate access to Plaintiff's shackles or the connector chain. Based on the record evidence, a reasonable factfinder could not conclude that Defendants Patterson and Martin acted with deliberate indifference to Plaintiff's safety.[3]

### *B. Defendants Harron and Jones*

The Complaint alleges that Defendants Joel Harron, Superintendent of Scotland Correctional Institution (Docket Entry 2 at 2), and Eric Jones, Sergeant of Transportation at Scotland Correctional Institution (id. at 3), knew of the dangers associated with the van in question, yet allowed its use anyway. (See id. at 8-9.) Further, the Complaint alleges that both Defendants Harron and Jones knew that a transporting officer could use the connector chain on Plaintiff's shackles to hold the shackles off the stairs, but did not instruct Defendants Patterson or Martin to so use it.

---

[3] Because Plaintiff has failed to show a violation of a constitutionally protected right, Defendants Patterson and Martin are also entitled to qualified immunity. "Qualified immunity from § 1983 claims protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010) (internal quotation marks omitted). Furthermore, given the absence of a constitutional violation by any of the other Defendants, as discussed below, they are likewise entitled to qualified immunity. Plaintiff also cannot succeed on any official capacity claim against Defendants, because such a claim would amount to one against a State, which cannot proceed under Section 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

11

(Id. at 9.)  Finally, the Complaint alleges that Defendant Jones was "responsible for makeing [sic] sure that all the transport vehicles [were] safe to transport inmates in" and that he "chose to ignore" the danger presented by the stairs and failed to correct it.  (Id.)

As an initial matter, the record contains no evidence that Defendants Harron and Jones were personally involved in the incident.  Only Defendants Patterson and Martin were present when Plaintiff sustained his injuries.  (See Docket Entry 41-1 at 1, 4, 6.)  Furthermore, no evidence indicates that Defendants Harron and Jones interacted with the vehicle in question.

Additionally, although supervisory liability may exist under Section 1983 where

> (1) [] the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) [] the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) [] there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff,

Shaw v. Shroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted), the record does not reflect the existence of these factors.  Fundamentally, no record evidence suggests Defendants Harron and Jones knew of any unsafe conditions in the transport vehicles.  Furthermore, as discussed previously, see supra Section III.A., Plaintiff suffered no underlying

12

constitutional injury at the hands of those individuals supervised by Defendants Harron and Jones (i.e., Defendants Patterson and Martin). To the extent Defendants Herron and Jones' liability arises solely from their alleged legal responsibility for the actions of Defendants Patterson and Martin, Plaintiff's claim(s) against Defendants Herron and Jones must also fail. Huggins v. Weider, 105 F. App'x 503, 505 (4th Cir. 2004) (citing Young v. City of Mount Ranier, 238 F.3d 567, 579 (4th Cir. 2001)) ("There can be no liability under § 1983 on the part of a supervisory official in the absence of a constitutional violation on the part of those supervised."). In sum, nothing on the record would allow a reasonable factfinder to conclude that Defendants Harron or Jones acted with deliberate indifference to Plaintiff's safety.

### *C. Defendants Lewis and Keller*

Plaintiff's Complaint alleges that Defendants Robert Lewis, Director of Prisons (Docket Entry 2 at 2), and Alvin Keller, Jr., Secretary of Department of Correction (id. at 3), knew that shackles catching on van steps posed a problem throughout the state prison system, primarily because several inmates had filed suits against the Department of Correction after suffering injuries when their shackles became entangled with van steps. (Id. at 8-10.) The Complaint further alleges that both Defendants Lewis and Keller knew "there was no policy set in place to order transport officers to use available restraints/connector chain[s] while transporting

13

inmates from one destination to another to keep inmates [sic] shackles from dragging on the floor/ground." (Id. at 8; see also id. at 9.)  The Complaint contends that, had Defendants Lewis and Keller imposed such a policy, the incident at issue in the instant case would not have occurred. (Id. at 8-10.)

First, as discussed above, see supra, Section III.B., "[t]here can be no liability under § 1983 on the part of a supervisory official in the absence of a constitutional violation on the part of those supervised." Huggins, 105 F. App'x at 505.  Because Defendants Patterson and Martin did not violate Plaintiff's constitutional rights, Plaintiff's claim(s) against Defendants Lewis and Keller, in their capacity as supervisors, must fail. Further, also discussed previously, see supra, Section III.B., supervisor liability under § 1983 is very limited.  The record does not reflect the existence of any of the factors required for supervisor liability in Shaw; i.e., actual or constructive knowledge that a subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff," a response "so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices," and "an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff," Shaw, 13 F.3d at 799.

14

Plaintiff argues that two prior similar cases, Thames v. North Carolina Dep't of Corr., No. COA09-1376, 205 N.C. App. 469 (table), 698 S.E.2d 201 (table), 2010 WL 2817034 (July 20, 2010) (unpublished), and Dubose v. North Carolina Dep't of Corr., No. COA09-571, 205 N.C. App. 320 (table), 697 S.E.2d 525 (table), 2010 WL 2650627 (July 6, 2010) (unpublished), both involving prisoners' shackles catching on van steps as they exited the vehicle, put Defendants (at least Defendants Lewis and Keller) on notice concerning the danger of van steps to shackled prisoners (thus satisfying the first Shaw factor). (See Docket Entry 44 at 4-5 (citing id. at 16-19); see also Docket Entry 45-1 at 2-3; Docket Entry 48 at 2.) In both prior cases, the North Carolina Department of Correction was the only named Defendant; none of the Defendants in the instant case were parties. See Thames, 2010 WL 2817034, at *1; Dubose, 2010 WL 2650627, at *1. In addition, the instant record lacks any evidence that the vehicles at issue in the prior cases were equipped in the same manner as the van from which Plaintiff fell. These prior cases therefore do not show knowledge on the part of Defendants Lewis and Keller of any pervasive and unreasonable risk of constitutional injury in this case.[4]

---

[4] Plaintiff also points to the alleged letter from North Carolina Prisoner Legal Services which, in relevant part, states: "'[W]e are concerned about this issue because we have had many prisoners contact us with similar stories. We plan to write a letter to the DOC to make them aware of the situation and ask them to make system-wide changes the [sic] way prisoners exit vans to
(continued...)

15

### *D. Adequacy of Medical Treatment*

The Complaint arguably alleges that Plaintiff suffered from inadequate dental treatment. (See Docket Entry 2 at 5-6, 11.) "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "'[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention.'" Parson v. Terrell, No. 1:13-cv-48-RJC, 2013 WL 1196600, at *3 (W.D.N.C. Mar. 25, 2013) (unpublished) (alteration in original) (quoting Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976)). Furthermore, "[d]isagreements between an inmate and a physician over the

---

⁴(...continued)
prevent falls from happening in the future.'" (Docket Entry 44 at 2 (quoting id. at 20).) Plaintiff argues that "[i]f inmates in fact contacted prisoner legal services in the past about similar incidentces [sic] and North Carolina Prisoner Legal Services investigated it they would have first had to exhaust the grievance remedy procedure." (Id.) However, this letter does not in any way support a conclusion that any Defendants knew about an ongoing problem with prison vans. Moreover, the letter indicates that the organization declined to take Plaintiff's case, referencing the North Carolina Court of Appeal's decision against the plaintiff in Thomas and stating that "if [Plaintiff] filed a lawsuit the court would again decide that the DOC was not negligent and would dismiss [Plaintiff's] case." (Id. at 20.)

inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

In the instant case, the record evinces no medical treatment that rises to the level of deliberate indifference. To the contrary, Plaintiff received treatment from a dentist shortly after his fall and several times in the subsequent days. (See Docket Entry 41-5 at 1-2, 9, 11-12.) A prison dentist familiar with Plaintiff's file averred that his "impression is that [Plaintiff] received the appropriate treatment for the injuries sustained in June 2010 consistent with community standards." (Id.) Plaintiff has provided no evidence to the contrary. Furthermore, to the extent Plaintiff disagreed with the treatment he received at the hands of prison dentists, such disagreement, without more, cannot sustain his claim, see Wright, 766 F.2d at 849. Finally, although the Complaint includes a significant discussion of the medical attention Plaintiff received (see Docket Entry 2 at 5-6) and demands additional treatment (id. at 11), Plaintiff subsequently disavowed any claim in that regard: "Defendants had nothing to do with [his] medical needs. If Plaintiff wanted to hold someone accountable for his medical needs he would have sued the medical staff. Plaintiff is sueing [sic] for deliberate indifference on the basis that [] [D]efendants actually knew of the substantial

risk of serious harm, and failed to respond reasonably." (Docket Entry 45 at 4.)

### III. Conclusion

Defendants have identified an absence of evidence to support Plaintiff's case and Plaintiff has failed to "set forth specific facts showing that there is a *genuine issue for trial*," <u>Matsushita Elec. Indus.</u>, 475 U.S. at 586-87.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 40) be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Amend (Docket Entry 36) be denied as moot.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion in Limine (Docket Entry 39) be denied as moot.

                           /s/ L. Patrick Auld
                                **L. Patrick Auld**
                   **United States Magistrate Judge**

August 21, 2013